REQUESTED BY: Senator Ernie Chambers 3116 North 24th Omaha, Nebraska 68110
Dear Senator Chambers:
In your letter of July 5, 1982, you asked whether there is any constitutional impediment to the repeal of Neb.Rev.Stat. § 8-148.03 (Reissue 1977), which provides: `Bonds of the State of Israel are hereby made securities in which banks, savings and loan associations, insurance companies, and credit unions may properly and legally invest funds.' We can conceive of no constitutional impediment to such repeal. In 1974 the Legislature determined that it wished to authorize the designated financial institutions to invest in bonds of the State of Israel. If, in 1983, it determines that it no longer wishes to authorize such institutions to make such investments, certainly that is within the legislative power of the Legislature.
You also ask a second question which is more difficult. You ask what the legal effect of such a repeal would be on existing investments in the bonds. In other words, upon repeal of § 8-148.03, would institutions which had purchased such bonds pursuant to that section be required to divest themselves of such bonds, or could they continue to hold them to maturity? We have found no clear-cut answer to that question.
We have checked the statutes with respect to banks, savings and loan associations, and credit unions, and find no specific provision dealing with the continued holding of securities lawfully acquired, where the authority to purchase them was withdrawn after their acquisition.
With respect to insurance companies, Neb.Rev.Stat.44-311.01 (Reissue 1978) casts some light on the subject, although there is some question as to the result even there. This section provides: `Nothing in this act shall prohibit any such insurance company retaining any mortgages, bonds, debentures, or other securities now owned by it, if the investment therein by such company was authorized by law at the time of the acquisition thereof.'
This section could be narrowly construed to mean only that securities lawfully acquired before the date of the passage of the act of which § 44-311.01 was a part (1945) could be retained pursuant to that section, since the statute speaks of `securities now owned by it,' and a contention could be made that the word `now' limits the application of the statute to securities held on the effective date of the act. However, it does tend to negate an intention that the holdings of an insurance company are necessarily limited to investments authorized to be made under the terms of the act.
Whether the financial institutions involved would be required to dispose of Israeli bonds, or could continue to hold them until maturity is entirely a question of Legislative intent. In the absence of any language requiring disposition of bonds purchased before the repeal of § 8-148.03, we would be inclined to take the position that they could continue to hold them. However, we point out that it would be most unwise for the Legislature to leave this matter for speculation, and the uncertainties of the decision of the Supreme Court. It would be a very simple matter for the Legislature, if it repeals § 8-148.03, to provide either that any financial institution having acquired such bonds pursuant to that section could hold them to maturity, or, if that is the Legislature's desire, that such bonds be disposed of within a specified time after the effective date of the act.
Very truly yours, PAUL L. DOUGLAS Attorney General Ralph H. Gillan Assistant Attorney General